A97A1326. THE STATE v. COOPER.
(493 SE2d 1)

BIRDSONG, Presiding Judge.

This is a prosecution against Daniel Trent Cooper for driving under the influence of alcohol and drugs, possession of marijuana and failure to maintain lane. The trial court suppressed the results of urinalysis testing showing Cooper's urine was 0.04 percent grams blood/alcohol, and contained cocaine and metabolites of cocaine. Cooper moved to suppress the urine test results on grounds that the Division of Forensic Sciences (DFS) of the Georgia Bureau of Investigation (GBI) has not established rules relating to urine testing in

compliance with the Administrative Procedure Act, OCGA § 50-13-3. The trial court granted defendant's motion to suppress. *Held*:

Defendant Cooper argues that under OCGA § 40-6-392, blood tests are inadmissible if the testing method has not been approved by the GBI/DFS, and that in implementing OCGA § 40-6-392 (a) (1) the GBI/DFS is required to enact and publish rules of approved testing methods. *State v. Holton,* 173 Ga. App. 241 (326 SE2d 235). Cooper contends that Rules of Georgia Bureau of Investigation ("Techniques and Methods") Rules & Regulations of the State of Georgia, Section 92-3-96, actually *excludes* urinalysis as an approved method, by providing that if the result of a screening test is positive for alcohol, "either a blood or breath test to determine alcohol concentration is mandatory, except in those cases where a blood test is forbidden by law."

The State concedes that the publication of the GBI/DFS Rules and Regulations does not contain any rules approving or regulating drug or alcohol testing of urine samples. However, the State contends that the mere fact that an approval of urinalysis testing does not appear in the GBI/DFS rules does not mean there are no published rules regulating the testing of urine samples for alcohol and drug content.

The Administrative Procedure Act at OCGA § 50-13-2 (6) defines "rule" as "each agency regulation, *standard*, or statement of general applicability that implements, interprets, or prescribes law or *policy* or describes the organization, *procedure, or practice requirements* of any agency." (Emphasis supplied.) According to this language, any published "standard," or "statement of general applicability," "policy," "procedure," or "practice requirements" by the GBI/DFS which approves urine testing will suffice as a rule published by the GBI/DFS.

The State's expert witness testified that the DFS Standard Operating Procedures include urinalysis testing, and that urinalysis methods as used in this case are approved by the DFS, that they have been the same since the early 1970's, that they are published in the DFS Standard Operating Procedures manual and are available for public inspection. Defendant Cooper does not dispute the existence of written Standard Operating Procedures which approve urine testing, but he says they are not "published." However, appellant does not contend the bureau's SOPs for urinalysis are not available for public inspection in a printed form, which is a form of publishing. The evidence shows compliance with OCGA § 50-13-3 (b), which requires "rules" (which include "standards," "policies," "procedures" and "practices"; OCGA § 50-13-2 (6)) to be published and available for public inspection.

The language in Section 92-3-96 of the Rules of the Georgia

Bureau of Investigation ("Techniques and Methods") Rules & Regulations of the State of Georgia, that "either a blood or breath test to determine alcohol concentration is mandatory," requires a type of test which is not in issue. The fact that this Rule does not mention urine testing does not exclude urine testing as an approved method of testing, and it does not mean the GBI/DFS may not elsewhere approve urine testing, as the expert testified has been done.

The GBI is strongly advised to include all approved methods of testing and operating procedures in a clear publication and to specifically comply with the requirements of § 40-6-392 and the Administrative Procedure Act (*State v. Holton*, supra), to avoid forcing the State to litigate continuously the validity of the GBI/DFS test methods under the Administrative Procedure Act. See, e.g., *Bazemore v. State*, 225 Ga. App. 741 (484 SE2d 673) and *Corner v. State*, 223 Ga. App. 353 (477 SE2d 593).

*Judgment reversed. Eldridge, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 16, 1997 —
RECONSIDERATION DENIED NOVEMBER 3, 1997 — 

*Gerald N. Blaney, Jr., Solicitor, Rosanna M. Szabo, Assistant Solicitor*, for appellant.
*Steven M. Reilly*, for appellee.
*Clark & Towne, David E. Clark*, amicus curiae.